IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PUBLIC CLOTHING COMPANY, INC.<br><br>    Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA<br><br>    Defendants. | Court No. 26-01535 |

# COMPLAINT

Plaintiff, by and through its undersigned attorneys, alleges as follows:

1. Public Clothing Company, Inc. ("Plaintiff") is a United States based importer of various types of merchandise subject to the duties challenged herein and bring this Complaint to challenge the assessment of certain duties by Defendants upon its merchandise.

2. Through a series of Executive Orders beginning in February 2025, President Trump utilized the International Emergency Economic Powers Act, 50 U.S.C. §1701 *et seq.* ("IEEPA"), as authority to impose new and sizeable tariffs ("IEEPA Duties") on imported goods from numerous foreign countries, including countries from which Plaintiff sources its imported goods.

3. This Court, the Federal Circuit, and the Supreme Court have held that IEEPA does not authorize these tariffs. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade), *aff'd in part and rev'd in part*, 149 F.4th 1312 (Fed. Cir.), *aff'd sub nom. Learning Resources, Inc. v. Trump*, 607 U.S. ---, 2026 U.S. LEXIS 714 (U.S. Feb. 20, 2026).

4. Through this action, Plaintiff seeks a refund of all IEEPA Duties paid to Defendants with such costs and interest as provided by law and any further relief this Court

deems appropriate.

5. This action is necessary because even though the IEEPA Duties have been held unlawful by this Court and the Supreme Court, inter alia, importers that have paid IEEPA Duties, including Plaintiff, are not guaranteed a refund for those unlawfully collected tariffs in the absence of their own order or judgment from this Court.

6. Further, this action is necessary because it is uncertain whether Defendants will issue refunds on liquidated entries even in light of the Supreme Court's recent *Learning Resources* decision. Plaintiff seeks relief from the final or impending liquidations to ensure that its right to a complete refund is not jeopardized.

7. Accordingly, Plaintiff seeks a full refund, with costs and interest as required by law, of all IEEPA Duties Plaintiff has paid to Defendants.

## PARTIES

8. Plaintiff, Public Clothing Company, Inc., a U.S. company incorporated in New Jersey, is an importer of goods on which IEEPA Duties were paid to Defendants.

9. Defendant United States Customs and Border Protection ("CBP" or "Customs") is a federal agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. and responsible for the collection of tariffs, duties, and taxes on goods imported into the United States.

10. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

11. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. §702 and 28 U.S.C. §1581(i)(1)(B).

12. Defendants are referred to collectively in this complaint as "Defendants."

## JURISDICTION

13. The Court has subject-matter jurisdiction over this action under 28 U.S.C. §1581(i) and 28 U.S.C. §2631(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

14. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. §1585. In a civil action under 28 U.S.C. §1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§2643(a)(1), (c)(1).

## STANDING

15. Plaintiff has standing to bring this action pursuant to 28 U.S.C. §2631(i), because it is the importer of record for various goods imported into the United States from countries subject to the unlawful IEEPA Duties as implemented and collected by CBP. Because Plaintiff has paid IEEPA Duties to the United States as a direct result of the Executive Orders challenged in this action, Plaintiff has suffered injury and been "adversely affected or aggrieved by agency action."

16. Plaintiff have timely commenced this action "within two years after the cause of action first accrues." 28 U.S.C. §2636(i).

## GENERAL PLEADINGS

I.  **The IEEPA Duties**

    A.  **Trafficking Tariffs Orders**

17. President Trump has declared several national emergencies and imposed various tariffs in response since entering office on January 20, 2025, issuing several pauses and modifications to those tariffs, as summarized below.

18. On February 1, 2025, President Trump issued various Executive Orders premised on IEEPA imposing tariffs on imports from Canada[1], Mexico[2], and China[3]. President Trump claimed that such tariffs were justified under IEEPA because of a purported national emergency (collectively, the "Trafficking Tariff Orders").

19. President Trump subsequently modified the Trafficking Tariff Orders to impose additional tariffs.[4]

B. **Worldwide and Reciprocal Tariffs**

20. On April 2, 2025, citing trade deficits with trading partners of the United States as its own national emergency, President Trump issued Executive Order 14257 ("Reciprocal Tariff Order"),[5] once again invoking IEEPA to impose a 10 percent *ad valorem* baseline tariff on goods imported into the United States "from all trading partners." The Reciprocal Tariff Order imposed

---

[1] Exec. Order No. 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025) ("Canada Tariff Order") declared an emergency because of opioid trafficking and imposed a 25 percent tariff on imported goods from Canada with certain exceptions.

[2] Exec. Order No. 14194, *Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025) ("Mexico Tariff Order") imposed an additional 25 percent tariff on imported goods from Mexico. The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.*

[3] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025) ("China Tariff Order") declared an emergency because of opioid trafficking, declaring that the "the sustained influx of synthetic opioids" was a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce." The President claimed emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the [People's Republic of China] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id.*

[4] *See* Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025); Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025). A complete list of amendments to Executive Orders can be found in this Court's decision in *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).

[5] Exec. Order No. 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

"reciprocal" tariffs on 57 countries ranging from 11 percent to 50 percent *ad valorem*. The Reciprocal Tariff Order states that "U.S. trading partners' economic policies … suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *Id.*

21. As had been previously done with the Trafficking Tariff Orders, The President modified the Reciprocal Tariff Order issuing the following several Executive Orders: Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025) (raising the "reciprocal" tariff rate on China from 34% to 84%); Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025) (suspending for 90 days the higher country-specific tariffs on all countries except for China, which was again raised from 84% to 125%).

22. The President's Executive Orders directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS"), requiring that imported goods subject to the challenged tariffs be entered into the United States using the new HTSUS tariff codes.

23. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections, et al. v. Donald J. Trump, et al.*, No. 25-cv-00066, Apr. 14, 2025 (ECF Dkt. No. 2). As explained below, this Court held the orders unlawful; the Federal Circuit and the Supreme Court then affirmed.

24. In the months after the *V.O.S. Selections* complaint was filed, President Trump, invoking IEEPA, has issued additional executive orders imposing additional tariffs and modifying others. By filing this complaint, however, Plaintiff challenges only those orders this Court, the Federal Circuit, and the Supreme Court have already held to be unlawful (the "Unlawful Tariff Orders") and under which Plaintiff has paid duties.

### C. CBP's Implementation of the Unlawful Tariffs

25. CBP's regulations (Title 19 of the Code of Federal Regulations) govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. §152.11.

26. When goods are imported and entered into the United States, the importer of record deposits estimated duties on the entry based on the value, origin, and HTSUS classification of the imported goods. *See* 9 U.S.C. §1484.

27. CBP is responsible for confirming the HTSUS classification of the goods and assessing and collecting any duties and tariffs on those goods, including the IEEPA Duties, according to the rates established by the HTSUS. 19 U.S.C. §§1202, 1500, 1502. CBP may review the customs declaration and/or inspect the goods.

28. After CBP determines the final amount of duty, it "liquidates" the entry to fix the final appraisement of merchandise and confirming the final value, classification, duty rate, and amount of duty for the imported goods. *See* 19 U.S.C. §1500. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. §159.1.

29. Unless extended, liquidation must occur within one year. *See* 19 U.S.C. §1504(a). While liquidation is generally done automatically by operation of law, CBP attempts to liquidate duties 314 days after the date of entry of the goods and will usually post a notice on *Official Notice of Extension, Suspension and Liquidation* webpage.[6]

30. After liquidation has occurred, CBP notifies the importer of record if additional money is owed or they are entitled to a refund. *See* 19 U.S.C. §1500.42.

31. This Court and the Federal Circuit have cautioned that in certain circumstances an

---

[6] https://trade.cbp.dhs.gov/ace/liquidation/LBNotice/.

importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

32. This Court possesses the equitable authority to suspend liquidation. *See, e.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365–66 (Ct. Int'l Trade 2021).

33. After liquidation has occurred, and if the liquidation is protestable, the importer of record has 180-days to file an administrative protest contesting CBP's liquidation, asking CBP to "reliquidate" the entry and assessed duties. *See* 19 U.S.C. §1514.[7]

34. The CBP protest remedy need not be employed, and exhaustion of administrative remedies is not required, when such remedy would be futile or inappropriate. *See e.g.*, *McCarthy v. Madigan*, 503 U.S. 140 (1992); *Conoco Inc. v. Foreign Trade Zones Board*, 18 F.3d 1581 (Fed. Cir. 1994).

35. The Federal Circuit has held that where CBP acts in a "ministerial" capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

36. However, in *AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et. al.*, No.25-00255, Int'l Trade Dec. 15, 2025), --- F. Supp. 3d ---, 2025 Ct. Intl. Trade LEXIS 158, at *7 Dec. 15, 2025) (quotation omitted) ("*AGS*"), a three-judge panel of this Court confirmed the authority of this Court to reliquidate entries subject to the IEEPA duties stating that "the

---

[7] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. §1501.

explicit power to order reliquidation and refunds where the government has unlawfully exacted duties."

37.  In a related action, the government has represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et. al.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025). In a third action, *Strato Technology Solutions, LLC v. United States et. al.*, No. 25-322, ECF No. 14 at 4 (Ct. Int'l Trade) the Government represented that "defendants have made very clear—both in this case and in related cases—that they will not object to the Court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful."

38.  In *Strato Technology Solutions, LLC*, the Government also represented that "Defendants have also committed to refund any challenged duties paid by plaintiff importers if such duties are found to be unlawful once there is a final, unappealable court decision ordering refund of such duties to plaintiffs." ECF No. 16 at 9.

## II. The Supreme Court Has Held that IEEPA Duties Are Unlawful

39.  The IEEPA Tariff Orders reference IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

40.  None of these statutes authorizes the President to impose tariffs. Of these, Defendants have relied solely on the IEEPA statute to impose and collect the IEEPA Duties.

41.  On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections*, holding that IEEPA did not authorize assessment of IEEPA Duties. This Court permanently enjoined the government from enforcing the IEEPA Duties at issue in that case.

42. Upon appeal, the Federal Circuit stayed this Court's decision.

43. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA Duties are unlawful. *See V.O.S. Selections*.

44. In a separate lawsuit filed by a different group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. See *Learning Resources*. That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*.

45. The *V.O.S. Selections* and *Learning Resources* cases were consolidated.

46. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.

### III. Plaintiff Paid Preliminary IEEPA Duties

47. As of the date of this complaint, Plaintiff has paid IEEPA Duties imposed by Defendants pursuant to the Unlawful Tariff Orders.

48. Plaintiff's imports subject to IEEPA Duties entered the United States under new HTSUS codes. The IEEPA Duties have been held unlawful by this Court, the Federal Circuit, and the Supreme Court. *See V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade), *aff'd in part and rev'd in part*, 149 F.4th 1312 (Fed. Cir.), *aff'd sub nom. Learning Resources, Inc. v. Trump*, 607 U.S. ---, 2026 U.S. LEXIS 714 (Feb. 20, 2026).

## STATEMENT OF CLAIMS

### COUNT I
### THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES*

49. Plaintiff incorporates paragraphs 1-48 above by reference.

50. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and this court's ruling and the Federal Circuit's affirmance of this court's opinion in *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA, 50 U.S.C. §1701 *et seq.*, when he imposed tariffs on imported goods.

51. The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Supreme Court's words, "[o]ur task … is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Learning Res.*, slip op. at 16. The Supreme Court thus affirmed the Federal Circuit's decision, which for its part had affirmed this Court's ruling on the merits of the IEEPA tariffs. *Id.* at 21.

52. The Unlawful Tariff Orders purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA.

53. In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc.*, 149 F.4th 1312 (Fed. Cir. 2025), Dkt. No. 6.

54. This Court is bound by the *Learning Resour*ces decision and as a result of that decision should order refunds of all IEEPA duties paid by Plaintiff, with interest as provided by law.

55. Plaintiff is entitled to a refund of the unlawfully collected IEEPA Duties paid to Defendants, with costs and interest as provided by law.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

    a)    order Defendants to reliquidate without IEEPA Duties all of Plaintiff's entries that were liquidated with IEEPA Duties;

    b)    order Defendants to liquidate without IEEPA Duties all of Plaintiff's unliquidated entries filed with IEEPA Duties;

    c)    order Defendants to refund to Plaintiff all IEEPA Duties collected from Plaintiff, with interest as provided by law;

    d)    award Plaintiff its reasonable costs, including attorney's fees incurred in bringing this action; and

    e)    grant such other and further relief as this Court deems just and proper.

Dated: March 6, 2026

THE OBERT LAW FIRM, P.L.L.C.
*Attorneys for Plaintiff*

By: /s/ Don M. Obert
Don M. Obert
196-55 McLaughlin Avenue
Hollis, New York 11423
Tel: (646) 546-5111
Email: obert@obertlaw.com